UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN SCONE,

                    Plaintiff,

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

**REPORT AND RECOMMENDATION**

11-CV-878
(NAM/VEB)

## I. INTRODUCTION

In February of 2008, Plaintiff John Scone filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that he has been unable to work since December of 2004. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through his attorneys, Lachman & Gorton, Peter A. Gorton, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

On February 11, 2008, Plaintiff applied for disability and disability insurance benefits, alleging that he had been unable to work since December 31, 2004. (T at 89-93, 94-97).[1] The Commissioner initially denied the applications and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on April 30, 2010, in Syracuse, New York before ALJ Richard West. (T at 19). Plaintiff appeared with his attorney and testified. (T at 24-41).

On August 10, 2010, the ALJ issued a written decision finding that Plaintiff was not disabled under the Social Security Act and denying Plaintiff's applications for benefits. (T at 7-18). The ALJ's decision became the Commissioner's final decision on June 24, 2011, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 1-4).

Plaintiff commenced this action by filing a Complaint on July 26, 2011. (Docket No. 1). The Commissioner interposed an Answer on November 18, 2011. (Docket No. 8). Plaintiff filed a supporting Brief on January 18, 2012. (Docket No. 11). The Commissioner filed a Brief in opposition on March 6, 2012. (Docket No. 14). Plaintiff requested and received permission to file a reply brief on March 19, 2012. (Docket No. 14).[2]

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

[2] Plaintiff filed a correction to the Reply Brief on April 6, 2012. (Docket No. 15).

2

accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons set forth below, it is recommended that Plaintiff's motion be granted, the Commissioner's motion be denied, and this case be remanded for further administrative proceedings.

### III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford

---

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

### 1.    Commissioner's Decision

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009 (the "date last insured") and had not engaged in substantial gainful activity since December 31, 2004, the alleged onset of disability date. (T at 12).

The ALJ determined that Plaintiff had the following impairments considered "severe" under the applicable Social Security Act Regulations (the "Regulations"): status post surgery to remove arachnoid cyst from lumbar spine; chronic low back pain; hypertension; prostate cancer in remission; depression; insomnia; and a history of polysubstance abuse.

---

the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

(T at 12).

However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 13).

After reviewing the medical evidence, the ALJ concluded that Plaintiff retained the residual functional capacity to perform sedentary work limited to occasional climbing of ladders, ropes or scaffolds; occasional climbing of stairs and ramps; occasional balancing, stooping, kneeling, crouching, and/or crawling. (T at 13). The ALJ found that Plaintiff could understand, remember, and carry out simple instructions only. (T at 13). The ALJ determined that Plaintiff could not perform his past relevant work as a telemarketer. (T at 16).

Considering Plaintiff's residual functional capacity, age (41 on the alleged onset date), education (high school), and work experience, the ALJ determined that Plaintiff was able to perform jobs that exist in significant numbers in the national economy. (T at 16). Accordingly, the ALJ concluded that Plaintiff had not been under a "disability," as that term is defined under the Act, from the alleged onset date (December 31, 2004) through the date of the ALJ's decision (August 10, 2010) and was therefore not entitled to benefits. (T at 17).

As noted above, the ALJ's decision became the Commissioner's final decision on June 24, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

**2.    Plaintiff's Claims**

Plaintiff argues that the Commissioner's decision should be reversed. He offers two (2) principal arguments in support of his position. First, Plaintiff challenges the ALJ's

residual functional capacity assessment. Second, Plaintiff contends that the ALJ should have consulted a vocational expert. Both arguments will be addressed in turn.

### a. RFC Determination

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, and symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the Regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

As discussed above, the ALJ concluded that Plaintiff retained the residual functional capacity to perform sedentary work limited to occasional climbing of ladders, ropes or scaffolds; occasional climbing of stairs and ramps; occasional balancing, stooping, kneeling, crouching, and/or crawling. (T at 13). The ALJ found that Plaintiff could understand, remember, and carry out simple instructions only. (T at 13).

The ALJ's RFC determination was based, in significant part, upon the opinion provided by Dr. Maria Galu, Plaintiff's treating physician. (T at 16). Dr. Galu opined that Plaintiff could sit for six or more hours in an eight-hour day; stand for at least two hours in

an eight-hour day; lift over 10 pounds for up to 3 hours per day; and had only mild impairments with respect to concentration and his ability to sustain a work pace. (T at 471-42). Dr. Galu also found that if Plaintiff attempted work on a sustained basis (defined as 8 hours per day, 40 hours per week), his medical condition would "probably" result in a substantial number of absences from work (defined as four or more times per month). (T at 471). Dr. Galu's treating relationship with Plaintiff spanned several years (from December of 2006 through July 2010). (T at 473).

The ALJ accorded "great weight" to Dr. Galu's opinion and adopted all of her findings regarding Plaintiff's functional limitations, with the exception of the physician's finding that Plaintiff's condition would "probably" cause excessive work absences. (T at 16). The ALJ rejected that particular finding because he found "no rationale or substantiation for that opinion in the record." (T at 16). This Court finds that the ALJ's decision in this regard was not in accord with applicable law or supported by substantial evidence.

The ALJ recognized Dr. Galu's "years-long treating relationship" with Plaintiff and, indeed, relied heavily upon the treating physician's assessment. Having (appropriately) placed such an emphasis on the treating physician's opinion,[5] the ALJ should not have

---

[5]Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).
Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

discarded the excessive absence indication simply because Dr. Galu had not provided an express rationale.

Rather, the ALJ had an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even [though] plaintiff [was] represented by counsel" to determine upon what information Dr. Galu based her excessive absence indication. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."); Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence"); SSR 96–5p (requiring ALJs to "make every reasonable effort to recontact [treating] sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear").

Moreover, contrary to the ALJ's conclusion, the record contained evidence consistent with Dr. Galu's excessive absence indication. To wit, Dr. Myra Shayevitz, a consultative examiner, opined that Plaintiff had "very significant problems," including marked or significant limitation of motion in his neck, lower back, and right hip. (T at 275). The ALJ afforded "little weight" to Dr. Shayevitz's assessment on the grounds that it was inconsistent with Dr. Galu's opinion. (T at 16). However, the ALJ appears not to have considered the fact that Dr. Shayevitz's finding might support Dr. Galu's excessive absence indication and *vice versa*. Further, Plaintiff testified that he was forced to leave his

9

employment as a customer service representative because his pain prevented him from maintaining a regular work schedule. (T at 26).[6] This testimony is supported by Dr. Galu's excessive absence indication and Dr. Shayevitz's conclusion that Plaintiff had "very significant problems."

For the foregoing reasons, this Court finds that a remand is necessary to develop the record. In particular, Dr. Galu should be re-contacted and asked to provide a further explanation and rationale for her excessive absence finding. The ALJ should then reconsider all of the evidence, including Plaintiff's testimony and Dr. Shayevitz's opinion in light of the record, as further developed.

### b.     Failure to Consult a Vocational Expert

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v.

---

[6] Courts in the Second Circuit have recognized that pain is an important element in DIB and SSI claims, and a claimant's testimony regarding the disabling effects of his or her pain must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994).

Chater, 915 F. Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

In this case, the ALJ used the Grids in reaching his disability determination, finding that a finding of "not disabled" was appropriate under the framework of Medical-Vocational Rules 201.28 and Rule 201.21. (T at 17). As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. Pratts, 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06). When nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminish the claimant's work capacity beyond that caused by his or her exertional limitations. Id. A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful

employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (*on a sustained basis*) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15 (emphasis added). "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

Here, the ALJ's reliance on the Grid framework (and decision not to consult a vocational expert) was based upon his RFC assessment and his conclusion that Plaintiff's non-exertional impairments caused "little or no effect on the occupational base of unskilled sedentary work." (T at 17). However, as discussed above, the ALJ's RFC assessment was based heavily upon the treating physician's opinion, which (in turn) the ALJ did not properly evaluate. Rather, the record needs further development regarding Dr. Galu's excessive absence indication. Upon such further development, it is possible that Plaintiff's ability to perform the basic demands of unskilled work on a sustained basis is significantly limited and that consultation with a vocational expert is warranted.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm,

reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be DENIED, that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, and that this case be remanded for further administrative proceedings.

Respectfully submitted,

*[signature]*

Victor E. Bianchini
United States Magistrate Judge

Dated:   August 9, 2012

13

Syracuse, New York

### V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were*

*not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

_____
Victor E. Bianchini
United States Magistrate Judge